**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**GORDON R. BASSETT**
and **LAURA BASSETT**

      Plaintiffs,

vs.                                                         Civ. No.         **02-0189 MCA/WWD**

**CHUCK ATWELL**,
**RE/MAX ONE, INC.**,
**SANTA FE AGENCY,**
**INC.**, and **LA COSA**
**VERDE CORPORATION**,
d/b/a **ATWELL REAL**
**ESTATE INVESTMENTS**,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Plaintiffs' Motion for Summary Judgment* (Doc. No. 29) filed on December 23, 2002. The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, finds that Plaintiffs' motion should be denied for the reasons set forth below.

**I.**     **FACTUAL BACKGROUND**

On May 25, 1996, Plaintiffs Gordon Bassett and Laura Bassett entered into a contract with Defendants Chuck Atwell (Atwell) and Santa Fe Agency, Inc. (Santa Fe Agency) to sell Plaintiffs' 1100+ acre farm near Moriarty, New Mexico. (Undisputed Fact ¶1). At that time,

Atwell was a licensed real estate agent associated with Santa Fe Agency and was also an agent and officer of La Cosa Verde Corporation (La Cosa). (Compl. ¶ 10). Atwell entered into the contract on behalf of himself and La Cosa. (Id. at ¶ 11). In approximately January 1996, the listing for the farm was transferred from Santa Fe Agency to Re/Max One, Inc. (Re/Max), and Atwell continued to serve as the real estate agent for Plaintiffs. (Id. at ¶ 2 &3). On February 4, 1998, Jack and Linda Bryan (the Buyers) signed a purchase offer on Plaintiffs' farm. (Undisputed Facts ¶ 5). The Buyers presented the offer to Atwell. Ultimately, the farm was sold to the Buyers.

A Re/Max real estate sign with Atwell's name and telephone number on it was placed on the property by Atwell. It stated: "FOR SALE 1100 ACRE FARM 350 AC. IRRIGATED." (Plaintiffs' undisputed facts ¶ 3). Atwell obtained records from the State Engineer's Office, which indicated that Plaintiffs' had water rights to irrigate 328.2 acres, some 21.8 acres fewer than advertised in the sign. (Id. at 4). Atwell claimed that he disseminated the records from the State Engineer's Office to all potential buyers. (Dep. Atwell at 83). He also stated that he used the information from the State Engineer's Office at the time the property was listed. (Dep. Atwell at 9).

In September 1999, the Buyers sued Plaintiffs in the First Judicial District Court, State of New Mexico, County of Santa Fe, Cause No. D-0101-CV-99-2109. Two matters at issue in that lawsuit pertain to the instant case: (1) the misrepresentation as the number of acres of irrigated land and (2) the poor water production of the West Well.

Atwell was not named as a party-defendant in the state action. However, Plaintiffs provided him with a copy of the complaint. He was deposed; he produced documents; and he testified at the trial. At the conclusion of the trial, District Judge Art Encinias found in favor of the Buyers and awarded damages.

The specific findings of Judge Encinias, as they pertain to the matters of the water rights acreage and the West Well, are as follows: "[T]he Bassetts knew that they were entitled to 328.1 acres of irrigated land. However, they represented to prospective buyers, including the Bryans, that they had 350 acres of irrigated land. The Bryans relied upon this representation in choosing to purchase The Farm." (Ex. A ¶ 11). Judge Encinias also found that "[t]he Bassetts knew, by the mid-1990's, that the West Well was becoming less productive." (Id. at ¶ 13). Finally, Judge Encinias found that "Atwell assured [the] Bryan[s] that the West Well was productive, that [the tenant] was making the statement in order to prevent the sale of the Farm and that the Bassetts had recently spent $15,000 in well repairs." (Id. at ¶ 15).

At the previous trial, Atwell testified that he did not make any statements about the water production of the West Well. He testified that he used the information from the State Engineer's Office at the time the property was listed. It was established in the state court proceeding that the West Well had very poor water production. At trial, the Buyers claimed that the tenant of the farm informed them about poor water levels of the West Well, but upon inquiry, Atwell assured them otherwise, stating that the Bassetts spent $15,000 in well

-3-

repairs. At the conclusion of the trial, Judge Encinias awarded the following damages: $54,750 as the reasonable value of the lost water rights; $27,142 as damages for repair of the well; and $30,000 as damages for loss of crops.

On January 18, 2002, Plaintiffs sued Atwell, Re/Max, Sante Fe Agency, and La Cosa in the First Judicial District Court (the present case). Plaintiffs claim relief under the theories of indemnification, negligence, negligent misrepresentation, intentional misrepresentation, breach of contract, breach of implied terms of the contract, and breach of fiduciary duty. Defendants removed the case to federal court on the basis of diversity jurisdiction. Santa Fe Agency was dismissed through the stipulation of the parties. The parties agreed to dismiss the alleged actions of Atwell occurring prior to January 22, 1996.

## II.  DISCUSSION

Both Plaintiffs and Defendants filed cross-motions for summary judgment. Plaintiffs argue that the state court judgment is binding upon Defendants under the doctrines of collateral estoppel and indemnity estoppel. Plaintiffs' summary judgment motion is addressed herein.

### A.  Summary Judgment Standard

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a

motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.     Collateral Estoppel**

Collateral estoppel bars relitigation of ultimate facts or issues actually and necessarily decided in a prior law suit. See Silva v. State, 106 N.M. 472, 474, 745 P.2d 380, 382 (1987). Federal courts must give the same preclusive effect to state court judgments that those

judgments would be given in the courts of the state in which the judgments were rendered. See Davis v. Gracey, 111 F.3d 1472, 1477 (10th Cir. 1997). Under collateral estoppel, the cause of action in the second suit need not be identical with the first suit. See Silva, 106 N.M. at 474, 745 P.2d at 382. Under New Mexico law, (1) the party against whom collateral estoppel is asserted must have been a party in or in privity with a party to the original action; and (2) the two cases must have concerned the same ultimate issue or fact, which was (a) actually litigated and (b) necessarily determined in the first suit. See Delisle v. Avallone, 117 N.M. 602, 605, 874 P.2d 1266, 1269 (Ct. App. 1994). Fundamental fairness requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate. To give rise to collateral estoppel, the finding of ultimate facts in the prior action must have been final. See Silva, 106 N.M. at 474, 745 P.2d at 382 (citing C & H Constr. & Paving Co. v. Citizens Bank, 93 N.M. 150, 160-61, 597 P.2d 1190, 1200-01 (Ct. App. 1979)). Atwell was not a party to the previous suit; however, Plaintiffs contend that he was their agent and thus was in privity with them with respect to matters litigated in the prior suit.

A person who is not a party to an action, but who controls or substantially participates in the control of the presentation on behalf of the party, is bound by the determination of issues decided as though he were a party. See Delisle, 117 N.M. at 605, 874 P.2d at 1269 (citing Restatement (Second) of Judgments § 39, at 382 (1980)).

> "Generally speaking, the rule as to participating non-parties requires that the non-party have control, or at least joint control of the prosecution or defense of the suit. And he must be able to control the decision to appeal or

>not to appeal. Instigating litigation . . . is not sufficient. Nor is a non-party's participation sufficient if he merely assists . . . by procuring witnesses or evidence, unless, by such assistance, the non-party acquires the requisite degree of control."

Poorbaugh v. Mullen, 96 N.M. 598, 601-02, 633 P.2d 706, 709-10 (Ct. App. 1981). As the party requesting invocation of collateral estoppel, it is Plaintiffs' burden to "'introduce sufficient evidence for the [district] court to rule whether the doctrine is applicable.'" Delisle, 117 N.M. at 606, 874 P.2d at 1270.

In the present case, Plaintiffs did not introduce evidence of Atwell's control over the previous litigation, or the extent of Atwell's participation in the litigation. They simply allege that he was their real estate agent, and suggest that this relationship and the award of damages made by Judge Encinias is sufficient to invoke the doctrine of collateral estoppel. The circumstances of this case do not warrant such a conclusion.

In New Mexico, privity is established through sufficiency of a non-party's control and participation. See Poorbaugh, 96 N.M. at 602, 633 P.2d at 710. An agency has been found to provide requisite privity only when the principal or agent is attempting to benefit from collateral estoppel, and not when collateral estoppel is used against a principal or agent. See Ward v. Torjussen, 758 P.2d 1012, 1014 (Wash. Ct. App. 1988). It is unclear to this Court, from the record before it, whether Atwell had a full and fair opportunity to litigate the issues in the earlier case. It is also unclear to what extent the findings made by Judge Encinias, and

the conclusions drawn therefrom, implicate the conduct of Plaintiffs individually or as principals of Atwell.  See Silva,106 N.M. at 474, 745 P.2d at 382.

In this regard, it is important to note that the state court, while holding Plaintiffs liable, did not make any findings with respect to the obligations or omissions of Atwell. In fact, Judge Encinias noted that the Bassetts (Plaintiffs herein) "knew, by the mid-1990's, that the West Well was becoming less productive." (Ex. 1 ¶ 13).  This particular finding is silent as to any act or omission on the part of Atwell.  As noted above, the parties stipulated that any acts of Atwell, prior to 1996, were not germane to the present lawsuit.  The state court further found that "[t]he Bassetts knew that they were entitled to 328.1 acres of irrigated land.  However, they represented to prospective buyers, including the Bryans, that they had 350 acres of irrigated land.  The Bryans relied upon this representation in choosing to purchase The Farm." (Ex. 1 ¶ 11).  Again, this finding is silent as to any act or omission of Atwell.  Judge Encinias, with respect to Atwell, noted that "Atwell assured [the] Bryan[s] that the West Well was productive, that [the tenant] was making the statement in order to prevent the sale of The Farm and that the Bassetts had recently spent $15,000 in well repairs." (Ex. 1 ¶ 15).  The state court concluded that "[t]he Bassetts willfully or negligently failed to disclose to the Bryans that the West Well on The Farm was no longer productive. As a result of the Bassetts' willful failure or negligence, the Bryans expended money in a fruitless attempt to repair the well and, ultimately, to replace the well." (Ex. 1 Conclusions of law ¶ 4).  This Court declines to speculate as to what Judge Encinias intended by the

language of these findings with respect to the culpability of Plaintiffs by virtue of their own conduct, or the culpability of Plaintiffs by virtue of the acts of Atwell, their agent. Judge Encinias' findings do not directly address the principal-agent relationship as a basis for liability. For the reasons set forth above, the Court concludes that the doctrine of collateral estoppel cannot be applied in the present case. See also N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 110-111 (2nd Cir. 1999) (holding that the court did not actually decide the issue, but only observed that plaintiff was retired and was not aggressively looking for work, in a case where the issue to be decided was whether she had undertaken reasonable efforts to look for work).

### C. Indemnity Estoppel

The theory of indemnity estoppel can be stated as follows:

> [W]hen one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, . . . [t]he indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person[.]

Restatement (Second) of Judgments § 57(1). The notice must be timely, intelligible in demanding that the indemnitor assume defense of the action, sufficiently informative to enable the indemnitor intelligently to respond, and not accompanied by demands or conditions. Id. cmt. c. If the indemnitee intends to use as conclusive evidence the judgment which may be rendered against him in a pending suit for damages, he must give the

-9-

indemnitor proper notice of the pending suit so that the latter may defend it, or join in the defense should he see fit to do so. See 73 A.L.R. 2d 504. The notice by the indemnitee to the indemnitor must contain an offer or request to defend. See Imperial Ref. Co. v. Kanotex Ref. Co., 29 F.2d 193 (8th Cir. 1928) (holding that where notice of a third person's suit against the indemnitee was given by the latter to the indemnitor, and demand was made that the indemnitor come in and defend, the judgment obtained against the indemnitee in the former action was binding upon the indemnitor as to the questions necessarily determined thereby); Aetna Life Ins. Co. of Hartford, Conn. v. Maxwell, 89 F.2d 988 (4th Cir. 1937) (recognizing that when a person is responsible to another, and is duly notified of the pendency of a suit, and requested to assume the defense, he is no longer regarded as a stranger to that suit); Cunningham v. Goettl Air Conditioning, Inc., 980 P.2d 489, 494 (Ariz. 1999) (holding that the requirement of reasonable notice of the prior action and an opportunity to assume or participate in the defense was satisfied when a copy of the complaint and a letter asking that Defendant "accept this letter as a tender of the defense" of plaintiff was submitted). If the indemnitor was not a party to the original action against the indemnitee, and where he was under no duty to participate in the defense of the original action, or where being under such a duty he was not given reasonable notice of the action and requested to defend, neither the indemnitor nor the indemnitee is bound in subsequent litigation between them by findings made in the action. See Crawford v. Pope & Talbot, Inc., 206 F.2d 784, 795 (3rd Cir. 1953). Further, where the indemnitor with notice of the

action and of the indemnitee's request that he defend it does not participate in the defense, but leaves it to the reasonable efforts of the indemnitee, then in subsequent litigation between them, both the indemnitor and the indemnitee are bound by the findings necessary to the judgment in the action.  See id.

Plaintiffs sent Atwell a copy of the Buyers' complaint filed in the state court action. Atwell was deposed in that proceeding and had his counsel with him at the deposition.  He produced the documents and his testimony was offered at trial.  This Court views these actions as insufficient to express the indemnitee's (Plaintiffs herein) intention to look to the indemnitor for recovery.  Therefore, for the foregoing reasons, this Court concludes that Atwell cannot be held liable for an adverse judgment rendered in a third person's action against Plaintiffs under the theory of indemnity estoppel.  Summary judgment is denied on the basis of indemnity estoppel.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied.

**IT IS, THEREFORE, ORDERED** that *Plaintiffs' Motion for Summary Judgment* (Doc. No. 29) is **DENIED**.

**SO ORDERED**, this 4th day of April 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*